Welch, J.
The case presents two questions: 1. Were these taxes legally and constitutionally assessed ? 2. If so, are the plaintiffs entitled to recover them back from the treasurer ?
The taxes were assessed under the act of April 5, 1859, (S. & C. 1438), and it is not denied that the assessments were made in conformity to the requirements and provisions of that act. The act subjects to taxation “ all moneys, *8 credits, investments in bonds, stocks,” etc., “ of persons residing ” in the state, and especially declares that the terms “stocks” and “bonds” shall apply as well to stocks and bonds issued outside of the state, as to those issued in the state.
What the plaintiffs’ counsel contend for is, that such bonds and stocks can not legally be subjected to taxation, except in the state where they are issued, and that, therefore, this act of April 5, 1859, in so far as it assumes to impose a tax on foreign bonds, is unconstitutional and void. They claim that section 2 of article 12 of the state constitution, rightly interpreted, does not authorize such a tax, or if it does authorize such a tax, then that this section of the state constitution is in violation of. the constitution of the United States. Section 2, article 12, of the state constitution, merely names the subjects of taxation, and makes no limitation as to their situs, or ownership. The subjects of taxation so named are “ moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise,” and also “ real and personal property.” It declares that “ all ” these subjects so named (except certain exempted items, which have no relation to the present case), shall be taxed “ by a uniform rule.”
The question so elaborately argued by counsel — namely, whether the state can, under this section of the constitution,, and without violation of the federal constitution, tax real estate, or tangible personal property, whose actual situs is without the state — does not arise in the ease. The act under which these taxes were assessed, does not assume to impose any such tax ; nor, so far as I know, has any law of the state ever assumed to do so. Our system of ad valorem taxation has uniformly proceeded upon the theory, that torngible property is to be taxed according to the law of the place where it is situated, irrespective of the residence of its owner; while, with equal uniformity, it has proceeded upon the theory that “ credits,” “ investments in bonds,” “ stocks,”’ etc., are taxable according to the laws of the place where their owners or holders reside. Our ad *9 valorem system of taxation was first established by the act of 1846 (vol. 44, p. 85). That act was in force at the time the present constitution was adopted, and was fully and favorably known to the people of Ohio. By that law tangible property was not subjected to taxation unless situated “ within the state;” but “ stocks ” of persons “ residing in the state,” and “credits” of persons .residing in the state, including “ every claim or demand for money, labor, or other valuable thing, due, or to become due,” were subjected to taxation. So far as questions in this case are concerned, the section of the constitution in question is a substantial embodiment of the provisions of that act, the only material difference being, that the law of 1846 limits the right to tax tangible property to cases where it is located within the state, while the constitution contains no such limitation. Both agree, however, in taxing resident owners of intangible property, irrespective of its real or constructive situs.
The statute of 1852 (vol. 50, p. 138), enacted at the first session of the general assembly after the adoption of the present constitution, is substantially similar in this respect to that of 1846, and likewise to that of 1859, under which these taxes were assessed; in other words, for nearly a third of a century, and ever since we have had an ad valorem system of taxation, the people of the state have acquiesced in the policy of taxing resident owners of credits, notes, bonds, stocks, and the like, without regard to the residence of the debtor, or the place where the securities are issued or made payable. Under such circumstances it is very plain tó us that it could not have been the intention, by section 2 article 12 of the present constitution, to-prohibit the imposition of such a tax. If the imposition of such a tax is prohibited, it must be prohibited by something outside of the state constitution.
The argument of counsel is: 1. That property must be taxed by the law of its situs; and, 2. That the situs of credits, bonds, etc., is the place of the debtor, obligor, or maker. This latter proposition we deny, without express *10 ing any opinion as to the former. Intangible property has no actual situs. If, for purposes of taxation, we assign it a legal situs, surely that situs .should be the place where it is oioned, and not the place where it is owed. It is incapable of a separate situs, and must follow the situs either of the creditor or the debtor. - To make it follow the residence of the latter, is to tax the debtor and not the creditor, to tax poverty instead of wealth.
That it is the creditor, and not the debtor that is to be taxed, and that the tax is to be imposed by the law of the creditor’s place of residence, and not by the law. of the debtor’s place of residence, seems to be quite well settled by authority. In the case of The Railroad Co. v. Pennsylvania, 15 Wall. (U. S.) 300, the court say:
“ Corporations may be taxed, like natural persons, upon their property and business. But debts owing by corporations, like debts owing by individuals, are not property of the debtors in any sense; they are obligations of the debtors, and only possess value in the hands of the ere 3-itors. With them they are property, and in their hands they may be taxed. To call debts property of the debtors is simply to misuse terms. All the property there can be, in the nature of things, in debts of corporations, belongs to the creditors, to whom they are payable, and follows their domicile, wherever that may be. Their debts can have no locality separate from the parties to whom they are due. This principle might be stated in many different wavs, and supported by citations from numerous adjudications, but no number of authorities, and no forms of expression, could add anything to its obvious truth, which is recognized upon its simple statement.”
See also The Railroad Co. v. Jackson, 7 Id. 265 ; Thomas v. Mason County Court, 4 Bush (Ky.), 135; McKean v. Northampton Co., 49 Penn. St. 519; Great Barrington v. Berkshire, 16 Pick. 572.
The assessment of the taxes in question being, in our judgment, lawful and constitutional, it becomes unnecessary to consider the other question made in the case.
*11 We see no error in the judgment of the Common Pleas, and it must be affirmed.
Similar judgments will be entered in the three other eases argued and submitted at the same time with above—namely, Valette v. Sebastian, Bugher v. Sebastian, and Lord v. Sebastian. They involve substantially the same questions—the only difference being that in one of these three cases the subjects of taxation were railroad stocks, instead of railroad bonds; and in the other case, the bonds, the investment in which was so taxed, were not in Ohio at the time of making the assessment, but were in the hands of the plaintiff’s agent, in New* York, where the interest on them was payable. We see no substantial difference between the four cases. ’ The subjects of taxation in all of them clearly fall within the broad language of the constitution — “ all investments in bonds, stocks,” etc. — and it is admitted that they arc within the purview of the acts under which the levies were made.

Judgments accordingly.